# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 23-CR-26-2 |
| PHILLIP GILARD | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant Phillip Gillard was a key member of a drug trafficking organization ("DTO") that poisoned the community for years by distributing narcotics, including large quantities of phencyclidine ("PCP"), methamphetamine, fentanyl, and cocaine in and around Philadelphia. Gillard was primarily responsible for the distribution of PCP and maintained a stash house next to the Memphis Street Academy, a charter school located at 2950 Memphis Street in Philadelphia, to further the DTO's business. In this way, he was integral to the DTO's operation, which wreaked havoc on the communities in which the DTO distributed dangerous drugs.

This pattern of behavior is consistent with the defendant's lengthy criminal record, which is detailed further below. He faces a statutory mandatory minimum of 15 years' imprisonment and faces a guideline range of 235 to 293 months. Here, the severe sentence contemplated by the Sentencing Guidelines is both just and prudent given Gillard's crimes of conviction and his history of criminal activity. The government therefore respectfully requests that the Court impose a significant sentence within the applicable sentencing guidelines range.

I. **INTRODUCTION**

On July 18, 2023, a federal grand jury returned a 54-count superseding indictment charging Diane Gillard and other members of the Gillard Street Gang drug trafficking group ("GSG") with federal drug trafficking crimes and firearms offenses. The superseding indictment charges

members of the GSG, including Diane Gillard, Phillip Gillard, Raphael Sanchez, Sharif Jackson, Amin Whitehead, Terrence Maxwell, Cesar Maldonado, and others, who supplied other drug traffickers with wholesale quantities of methamphetamine, PCP, fentanyl, and other narcotics in Philadelphia, Pennsylvania, and its surrounding areas.

The defendant, Phillip Gillard, was specifically charged in Counts 1, 15, 16, 19, 20, 27, 28, 45, 46, 49, 50, 52, 53, and 54 of the superseding indictment with conspiracy to distribute methamphetamine, phencyclidine, fentanyl, cocaine base, cocaine, and heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A) [Count 1]; distribution of a controlled substance and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2 [Counts 27, 45, 49]; distribution of a controlled substance within 1,000 feet of a protected location, in violation of 21 U.S.C. § 860(a) and 841(a)(1) and (b)(1)(A) [Counts 16, 20, 28, 46, 50]; distribution of a controlled substance and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2 [Counts 15, 19]; distribution of a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(C) [Count 52]; possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) [Count 54]; and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) [Count 53]. On February 16, 2024, the defendant was convicted by a jury of all counts charged against him in the superseding indictment.

II. **FACTS OF THE CASE**

The evidence at trial established that Phillip Gillard was a source of drug supply for the DTO and was specifically involved with multiple controlled buys between June 15, 2022, and January 6, 2023, involving 5,893 grams of PCP. These controlled buys were audio and video recorded, surveilled by law enforcement, involved recorded phone conversations, and occurred within 1,000 feet of the Memphis Street Academy. Gillard also was found with additional

quantities of drugs and loaded firearms at his residence.

On June 15, 2022, a law enforcement confidential source ("CS") placed a recorded call to co-defendant Diane Gillard ("D. Gillard"), to purchase PCP. D. Gillard agreed to sell the CS a quantity of PCP for $1,200. D. Gillard directed the CS to the 2900 block of Tulip Street. Shortly after speaking with the CS, D. Gillard called her brother Phillip Gillard ("P. Gillard") to order the narcotics. D. Gillard traveled to her brother's house located at 3006 Tulip Street and was let into the house by P. Gillard. P. Gillard provided the narcotics to D. Gillard who brought them to the CS, who was parked on the 2900 block of Tulip Street, in exchange for $1,200. Laboratory analysis confirmed that the substance was PCP weighting approximately 226.27 grams. (Counts 15 and 16).

On July 14, 2022, at approximately 10:51 a.m., the CS sent a text message to D. Gillard to set up a purchase of PCP. At approximately 11:15 a.m., the CS parked on the 2900 block of Tulip Street. At approximately 11:36 a.m., surveillance units observed P. Gillard enter 3006 Tulip Street. Shortly thereafter, D. Gillard approached 3006 Tulip Street with nothing in her hands and knocked on the front door. The door was opened from the inside and D. Gillard entered the house.

Shortly thereafter, D. Gillard left the house. At approximately 11:58 a.m., D. Gillard entered the CS's vehicle and handed the CS a green grocery bag containing two, 20-ounce Mountain Dew bottles each containing PCP. The CS asked D. Gillard if the PCP came from her brother (P. Gillard) and D. Gillard said yes, she "got it from my bro." The CS gave D. Gillard $2,500 for the PCP. Laboratory analysis confirmed that the substance was PCP weighing approximately 985.5 grams. (Counts 19,20).

On August 9, 2022, at approximately 11:17 a.m., the CS parked on the 2900 block of Tulip Street and placed a telephone call to D. Gillard in order to purchase PCP. Surveillance observed

D. Gillard enter 3006 Tulip Street. A few minutes later, D. Gillard exited 3006 Tulip Street with a large item in her right pants pocket. D. Gillard entered the front passenger seat of the CS's vehicle and handed a grey plastic bag to the CS containing a plastic bottle filled with PCP. The CS gave D. Gillard a brown paper bag containing $6,000. The CS told D. Gillard to thank her brother for lowering the price. D. Gillard stated that her brother "must like" the CS because "he doesn't do that for most people." Laboratory analysis confirmed that the substance was PCP weighting approximately 1504 grams. (Counts 27, 28).

On December 1, 2022, at approximately 12:41 p.m., the CS placed a telephone call to D. Gillard and arranged a purchase of PCP. At approximately 1:03 p.m., the CS parked on the 2900 block of Tulip Street and sent a text message to D. Gillard. D. Gillard replied she was "waiting for him to pull up."

Approximately 20 minutes later, P. Gillard parked at the intersection of Ann Street and Tulip Street and exited his truck carrying a black, cloth shopping bag with the words "Thank You for Shopping Here!" written on it. This bag appeared to contain a large rectangular item. P. GILLARD unlocked the front door of 3006 Tulip Street and entered the residence (while carrying the black bag). Approximately ten minutes later, D. Gillard knocked on the front door of 3006 Tulip Street and was let into the residence by P. Gillard. D. Gillard then exited the residence entered her vehicle and went to the 2900 block of Tulip where she parked next to the CS. D. Gillard exited her vehicle carrying a black shopping bag and entered the CS's vehicle.

D. Gillard handed the CS a black cloth shopping bag with the words "Thank You for Shopping Here!" written on it, which contained a 64-ounce plastic bottle filled with PCP. The CS Gave D. Gillard a brown paper bag containing $6,000, but D. Gillard told the CS to keep $1,000 to reimburse CS-1 for the poor quality of the crystal methamphetamine from a previous transaction

(11/13/2022). Laboratory analysis confirmed that the substance was PCP weighing approximately 1,517 grams. (Counts 45, 46).

On January 6, 2023, at approximately 11:33 a.m. the CS called D. Gillard to arrange the purchase of PCP. At approximately 12:10 p.m., the CS parked on the 2900 block of Tulip Street. Later that day, D. Gillard met P. Gillard at the front door of 3006 Tulip Street. At approximately 1:24 p.m., P. Gillard used a key to open the front door, and both P. Gillard and D. Gillard entered the residence. At 1:28 p.m., D. Gillard exited the residence carrying a black bag containing PCP. D. Gillard sold the black bag, which contained a plastic "ICY Lemonade" bottle that contained PCP to the CS for $6,000. (Counts 49, 50).

On January 25, 2023, FBI agents executed an arrest and search warrant at 3006 Tulip Street in Philadelphia. P. Gillard was home alone and arrested. The following items were found during the search:

a) Documents, including a vehicle registration showing proof of residence (kitchen).

b) a Taurus, Model G3C, 9mm semi-automatic pistol, bearing serial number ACM654079 loaded with 10 live rounds of ammunition (kitchen).

c) a Smith and Wesson, Model M&P 9, semi-automatic pistol, bearing serial number HVP3075 loaded with 25 live rounds of ammunition (kitchen).

d) 4 bottles containing PCP (kitchen) (laboratory analysis confirms the substance to be PCP with a net weight of 1,569.3 grams).

e) 456 clear Ziplock packets, stamped with "Coca Cola," containing heroin (kitchen) (laboratory analysis confirms the substance to be heroin with a net weight of 3.55 grams).

f) 209 blue flip top plastic jars containing cocaine base (kitchen) (laboratory analysis confirms the substance to be cocaine base with a net weight of approximately 14.29 grams).

g) 196 purple flip plastic jars containing cocaine base (kitchen) (laboratory analysis confirms the substance to be cocaine base with a net weight of 8.82 grams).

h) 397 White glazed packets stamped "Just for You" containing Xylazine (kitchen).

i) 5 clear plastic backs containing cocaine (kitchen) (laboratory analysis confirms the substance to be cocaine with a net weight of 1,128 grams).

j) 3 clear bags containing cocaine base (kitchen) (laboratory analysis confirms the substance to be cocaine base with a net wight of 172.27 grams).

k) Black and clear plastic bag containing marihuana (kitchen) (laboratory analysis confirms the substance to be marihuana with a net weight of 79.246 grams).

l) 2 clear Ziplock packets stamped "Party Rock" containing fentanyl (kitchen) (laboratory analysis confirmed the substance to be fentanyl with a net weight of .019 grams.

m) $10,340.00 (kitchen).

As a result of the search warrant, 3.55 grams of heroin, 0.019 grams of fentanyl, 195.38 grams of crack cocaine, 1,128 grams of cocaine, 1,569.3 grams of PCP, and 79.246 grams of marijuana was recovered (Count 52). The money, firearms, and drugs were all recovered from the kitchen in close proximity to one another. At the time of the search warrant, P. Gillard had sustained prior felony convictions prohibiting him from possessing firearms (Counts 53 and 54).

### III. LEGAL STANDARD

This Court must follow a three-step process when sentencing a defendant: (1) calculate the defendant's guideline sentence, (2) formally rule on any departure motions and state how any departure affects the defendant's guideline calculation, and (3) exercise discretion by separately considering the relevant factors outlined in 18 U.S.C. § 3553(a) when setting the sentence. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guidelines range along with all the pertinent § 3553(a) factors in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

For the reasons discussed below, a sentence within the advisory guidelines range is warranted.

## IV. <u>SENTENCING CALCULATION</u>

### A. <u>Statutory Maximum Sentence</u>

The Court may impose the following statutory maximum and mandatory minimum sentences:

Conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) (Count 1): Maximum of life imprisonment, a 10-year mandatory minimum term of imprisonment, at least 5 years of supervised release to lifetime supervised release, a $10,000,000 fine, and a $100 special assessment.

Distribution of a controlled substance within 1,000 feet of a school or a playground, in violation 21 U.S.C. §§ 860(a), 841(a)(1), (b)(1)(A) (Counts 28, 46, 50: Maximum of life imprisonment, with a mandatory minimum term of imprisonment of 10-years, at least 10 years to lifetime supervised release, a $20,000,000 fine, and a $100 special assessment.[1]

---

[1] Counts 27, 45, and 49 are lesser-included offenses of Counts 28, 46, 50, respectively, and merge for the purposes of sentencing.

Distribution of a controlled substance within 1,000 feet of a school or a playground, in violation 21 U.S.C. §§ 860(a), 841(a)(1), (b)(1)(B) (Counts 16, 20): Maximum term of imprisonment of 80 years, with a mandatory minimum term of imprisonment of 5 years, at least 8 years to lifetime supervised release, a $10,000,000 fine, and a $100 special assessment.[2]

Possession with intent to distribute a controlled substance and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2 (Count 52): Maximum of life imprisonment, a 10-year mandatory minimum term of imprisonment, at least 5 years of supervised release to lifetime supervised release, a $10,000,000 fine, and a $100 special assessment.

Possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count 53): Maximum term of imprisonment of 15 years, a $250,000 fine, and a $100 special assessment.

Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 54): Maximum of life imprisonment, with a mandatory 5 years term of imprisonment consecutive to any other term of imprisonment, a $250,000 fine, and a $100 dollar special assessment.

**Total Maximum and Mandatory Minimum Sentence**: life imprisonment, with a mandatory minimum sentence of 10 years' imprisonment, a mandatory consecutive 5 years of imprisonment on Count 54, at least 8 years of supervised release up to lifetime of supervised release, $100,500,000 fine, and a $900 special assessment. Forfeiture of all property used, in any manner or part, to commit, or to facilitate the commission of the charged offenses, and any property

---

2 Counts 2, 4, 6, 8, 10, 15, 17, 19, 21, 27, 32, 35, 37, 39, 41, 43, 45, 47, and 49 are lesser-included offenses of Counts 3, 5, 7, 9, 11, 16, 18, 20, 22, 28, 33, 36, 38, 40, 42, 44, 46, 48, and 50, respectively, and merge for the purposes of sentencing.

constituting, or derived from, proceeds obtained directly or indirectly from the commission of the charged offenses also may be ordered.

    B.    **<u>Sentencing Guidelines Calculation</u>**

The presentence report correctly calculates Gillard's guideline range. The base offense level is 32 under USSG §2D1.1(a)(5) and (c)(4) because the defendant possessed with intent to distribute at least 3,000 kilograms but less than 10,000 kilograms of converted drug weight, specifically 8,354 kilograms of converted drug weight. The defendant used 3006 Tulip Street in Philadelphia to store and distribute controlled substances. Because the defendant maintained a premises for the purpose of distributing a controlled substance, 2 levels are added, pursuant to USSG §2D1.1(b)(12). This results in a total offense level of 36. Based upon a total offense level of 36 and a criminal history category of III, the guideline imprisonment range is 235 months to 293 months, plus at least 60 months on Count 54. The total effective guideline range for imprisonment is 295 months to 353 months.

**V.    <u>GOVERNMENT'S RECOMMENDATIONS CONCERNING SENTENCING</u>**

    A.    **<u>Sentencing Factors</u>**

The Court must consider all of the sentencing considerations set forth in § 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### B. Application

The defendant committed serious offenses and did so after a lifetime of criminal behavior. His crimes fall squarely within the class of cases to which the applicable guidelines are addressed, and a sentence within the sentencing guidelines range is warranted.

#### 1. The Nature and Circumstances of the Offense

This was a serious offense. The defendant was an integral member of a sophisticated, large-scale, polydrug, drug trafficking organization. Narcotics such as PCP, methamphetamine, fentanyl, crack cocaine, and cocaine are powerful and often deadly drugs that have a high potential for abuse. Drug trafficking at any level is harmful and dangerous, but the amount distributed by this DTO, was horrific. There is no doubt that the defendant's actions unquestionably fueled the drug epidemic that plagues the nation and our community and supported a drug trafficking organization in the process. This Court must fashion a sentence that reflects the serious nature of the offense. Only a significant term of imprisonment, one within the advisory guidelines range, can accomplish this goal.

#### 2. The History and Characteristics of the Defendant

The most important feature of the history and characteristics of this defendant is his lengthy criminal history. As set out in the presentence report, Gillard has scarcely been out of trouble with the law since he was 17 years old. This history reflects a constant defiance of the law and utter disregard for the welfare of society.

The following is a summary of Gillard's adult criminal history:

| *Arrest/Age* | *Disposition* | *Charge/Court* | *Sentence* |
|---|---|---|---|
| 12/30/1994 (Age 17) | 8/8/1995 | Theft by unlawful taking/ Court of Common Pleas of Philadelphia County, Philadelphia, Pennsylvania; Docket No.: CP-51-CR-0111011-1995 | 8/8/1995: The defendant was found guilty and sentenced to not less than 8 months nor more than 23 months of imprisonment.<br><br>4/24/1997: The defendant's parole was revoked, and he was sentenced to serve the remainder of his back-time. |
| 7/11/1995 (Age 18) | 8/6/1997 | Riot and conspiracy/ Court of Common Pleas of Philadelphia County, Philadelphia, Pennsylvania; Docket No.: CP-51-CR-0803003-1995 | 8/6/1997: The defendant pled guilty and was sentenced to not less than 8 months nor more than 16 months of imprisonment.<br><br>3/14/1998: The defendant was paroled.<br><br>3/4/1999: The defendant's parole was terminated. |
| 1/23/1997 (Age 19) | 4/9/1997 | Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance and intentional possession of a controlled substance by person not registered/ Municipal Court of Philadelphia County, Philadelphia, Pennsylvania; Docket No.: MC-51-CR-0122181-1997 | 4/9/1997: The defendant was found guilty and sentenced to not less than 30 days nor more than 60 days of imprisonment. |
| 10/13/1998 (Age 21) | 3/3/1999 | Receiving stolen property/ Court of Common Pleas of Philadelphia County, Philadelphia, Pennsylvania; Docket No.: CP-51-CR-1114871-1998 | 3/3/1999: The defendant pled guilty and was sentenced to not less than 3 months nor more than 23 months of imprisonment followed by 1 year of probation.<br><br>12/19/2000: The defendant's probation was revoked, and he was sentenced to not less than 6 months nor more than 12 months of imprisonment.<br><br>10/30/2002: The defendant's parole was revoked, and he was sentenced to serve the remainder of his back-time. |
| 8/15/2000 (Age 23) | 12/11/2000 | Theft by unlawful taking/ Municipal Court of Philadelphia County, Philadelphia, Pennsylvania; Docket No.: MC-51-CR-0810811-2000 | 12/11/2000: The defendant was found guilty and sentenced to 1 year of non-reporting probation. |
| 7/21/2009 | 6/17/2010 | Unauthorized use of a motor vehicle/ | 6/17/2010: The defendant pled |

| | | | |
|---|---|---|---|
| (Age 32) | | Court of Common Pleas of Philadelphia County, Philadelphia, Pennsylvania; Docket No.: CP-51-CR-0010986-2009 | guilty and was sentenced to 12 months of non-reporting probation.<br><br>6/9/2014: The defendant's probation was revoked, and he was sentenced to no further penalty. |
| 9/29/2011 (Age 34) | 6/9/2014 | Possession of a firearm prohibited and firearms not to be carried without a license/ Court of Common Pleas of Philadelphia County, Philadelphia, Pennsylvania; Docket No.: CP-51-CR-0000272-2012 | 6/9/2014: The defendant was found guilty and sentenced to not less than 11½ months nor more than 23 months of imprisonment followed by 3 years of probation.<br><br>10/25/2016: The defendant's probation was revoked, and he was sentenced to 5 years of probation.<br><br>5/4/2018: The defendant's probation was revoked, and he was sentenced to 4 years of probation.<br><br>The defendant is awaiting a violation of probation (VOP) hearing, which is scheduled for June 18, 2024 |
| 10/10/2014 (Age 37) | 10/25/16 | Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, conspiracy, and possession of an instrument of crime/ Court of Common Pleas of Philadelphia County, Philadelphia, Pennsylvania; Docket No.: CP-51-CR-0014109-2014 | 10/25/2016: The defendant pled guilty and was sentenced to not less than 11½ months nor more than 23 months of imprisonment followed by 5 years of probation.<br><br>5/4/2018: The defendant's probation was revoked, and he was sentenced to 4 years of probation.<br><br>The defendant is awaiting a VOP hearing, which is scheduled for June 18, 2024. |

The defendant has received the benefit of every type of intervention including probation, parole, and imprisonment. Despite escalating sentences, an undeterred Gillard continued to commit more egregious crimes. It is evident that the defendant has not learned from his mistakes. Instead, this conviction is just another in a long string of criminal activity undertaken by the

defendant throughout his adult life and beginning when he was only 17-years old. The defendant resumed his criminal activity after each release from incarceration, and a guidelines sentence is necessary to impress upon Gillard the need to conform his life to the requirements of the law.

      **3.    The Need for Sentence Imposed to Reflect Seriousness of the Offense, Promote Respect for Law, and Provide Just Punishment**

There is a strong need to impose a sentence that reflects the seriousness of these offenses, promotes respect for the law, and provides just punishment. The Philadelphia region and the community in which Gillard's group sold narcotics is plagued by drug trafficking and gun violence and is burdened by the social and human costs that flow from the trafficking and abuse of these highly-addictive drugs. What is more, the defendant is not a drug mule who made a singular bad decision—his criminal conduct stretched for months and impacted countless people. A guidelines sentence is necessary to promote respect for the law in an individual who has repeatedly demonstrated that he has none, not only by committing the instant offense as a key member of a drug trafficking organization, but through a consistent pattern of criminal activity spanning most of his life.

      **4.    The Need for Adequate Deterrence and Protection of Public**

The need for adequate deterrence of this type of crime is great. The best way to deter this defendant and others is to send him to prison for a substantial period of time. Groups of drug traffickers acting together pose a tremendous threat to society because there is great power in the ability to pool resources and to insulate and protect others in the group from law enforcement. Given the prevalence of drug crimes in this region and these communities, the need to deter others from similar crimes is especially important. For this defendant, history has shown that a light sentence in state court did nothing to deter him from further drug crimes—indeed, the lenient treatment may have emboldened him and pushed him towards the drug crimes in this case. The

sentence here should promote public protection and send a message to the defendant and to others that such conduct will not be tolerated. The sentence will also prevent the defendant from committing further crimes against the outside community for as long as he remains in prison.

> 5. **The Need to Provide the Defendant with Training, Medical Care or Correctional Treatment**

There is no demonstrated need to adjust the sentence in order to provide the defendant with educational or vocational training, medical care or additional treatment that cannot be adequately addressed by the Bureau of Prisons during incarceration.

> 6. **The Need to Avoid Unwarranted Sentence Disparities Among Similarly Situated Defendants**

Section 3553(a) is designed to ensure sentencing consistency among similarly situated defendants across the entire nation. *See United States v. Parker*, 462 F.3d 273 (3d Cir. 2006); *United States v. Carson*, 560 F.3d 566, 586 (6th Cir. 2009) ("Although it is true that § 3553(a)(6) requires a sentencing judge to consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" that "factor 'concerns national disparities between defendants with similar criminal histories convicted of similar criminal conduct not disparities between codefendants.'"). A sentence within the advisory guidelines range would therefore contribute to nation-wide consistency in sentences.

## VI. <u>CONCLUSION</u>

For these reasons, the government believes that only a significant sentence—one that fully accounts for the scope and severity of the defendant's criminal conduct and within the advisory

guidelines range—is appropriate in this case.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


/s/ *Everett Witherell*
EVERETT R. WITHERELL
ROBERT SCHOPF
Assistant United States Attorneys

Dated: May 28, 2024

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Government's Sentencing Memorandum was served on the defendant by mail.

Phillip Gillard
USM Reg # 41226-510
Lehigh County Jail
38 North 4th Street
Allentown, Pennsylvania 18102

/s/ *Everett Witherell*
Everett Witherell
Assistant United States Attorney

Dated: May 28, 2024